IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WILLIAM S. KILROY, JR.** | § | **Case No. 05-90083-H4-7** |
| | § | |
| Debtor | § | **Chapter 7** |

| | | |
|---|---|---|
| **T. LAYNG GUERRIERO, individually,** | § | |
| **W & L INSURANCE HOLDINGS** | § | |
| **COMPANY, L.L.C., a Delaware limited** | § | |
| **liability company, and AEGIS** | § | |
| **INSURANCE HOLDINGS CO., L.P., a** | § | |
| **Delaware limited partnership** | § | |
| **Plaintiffs** | § | |
| | § | |
| vs. | § | **Adv. No. 06-3320** |
| | § | |
| **WILLIAM S. KILROY, JR.** | § | |
| **Defendant** | § | |

**MEMORANDUM OPINION ON DEBTOR'S SUPPLEMENTAL MOTION TO DISMISS
FIRST AMENDED COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11
U.S.C. §§ 523 AND 727**

## I. INTRODUCTION

William Kilroy (**Kilroy**) filed a Chapter 7 petition on October 13, 2005. On April 6, 2006,

T. Layng Guerriero (**Guerriero**), a former business partner of Kilroy in various ventures, filed a

Complaint Objecting to Discharge under 11 U.S.C. § 523 and § 727.[1] Kilroy filed a Motion to

Dismiss on May 11, 2006 for failure to state a claim upon which relief can be granted. After a

hearing on July 7, 2006, Guerriero was granted the opportunity to amend his complaint to comport

with pleading requirements. He did so by filing a First Amended Complaint on July 17, 2006. This

Memorandum Opinion addresses Kilroy's Supplemental Motion to Dismiss, which was filed on July

---

[1] This is the manner in which Guerriero styled his pleading. The Court recognizes that the correct title should
have been a complaint to determine dischargeability under § 523 and an objection to discharge under § 727. However,
for purposes of the Opinion, the pleading will be called the Original Complaint.

18, 2006.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

### A. Factual Background

1. On April 28, 1998 W & L Insurance Holdings Company, L.L.C. (**W&L**) was formed as a Delaware corporation. W&L is the general partner of Aegis Insurance Holdings Co., L.P. (**Aegis**), which is a Delaware limited partnership. [Docket No. 16, ¶ 9 and 10.][2]

2. Guerriero and Kilroy each own 44.55% of Aegis; Mrs. Lora Jean Kilroy (**Mrs. Kilroy**),[3] Kilroy's mother, owns 9.9%; and W&L owns 1%. [Docket No. 16, ¶ 10.]

3. Aegis owns certain business ventures, including an insurance company and a software developer which provides services for funeral homes. [Docket No. 16, ¶ 9.]

4. In order to gain financing for the purchase of an asset for Aegis, Guerriero executed an irrevocable proxy assigning his voting rights in Aegis to Kilroy. [Docket No. 16, ¶ 11.]

5. Guerriero was the minority shareholder of W&L, owning 33% of the company. Kilroy was the majority shareholder, owning 67%. Exercising his rights as a majority shareholder, Kilroy appointed himself as manager of W&L. [Docket No. 16, ¶ 10.]

6. Guerriero and Kilroy were also partners in a web-based obituary service called Arrange

---

[2] Unless otherwise indicated, all docket citations in this Opinion refer to Adversary Case No. 06-3320 for the Bankruptcy Case No. 05-90083.

[3] Any references to "LJ Kilroy" in quotations from documents appearing in this Memorandum Opinion refer to Mrs. Kilroy.

Online (**AO**), each owning a 50% share. [Docket No. 16, ¶ 12.] The aforementioned proxy did not cover the shares of AO. [Id.]

7.    Guerriero and Kilroy wanted AO to acquire Continental Computer Specialties Inc. (**CCSI**). Guerriero and Kilroy pledged assets worth $12,000,000.00 toward the purchase and then solicited other investors to invest in the new holding company, Final Arrangements, LLC (**FAL**), which would own CCSI. [Docket No. 16, ¶ 14.]

8.    Sometime prior to October of 2005, Kilroy sought a loan from Southwest Bank of Texas (**SWB**). [Docket No. 16, ¶ 33.] As security for the loan, SWB required that Mrs. Kilroy co-sign the note. *Id.* Further, Guerriero allowed Kilroy to use Guerriero's shares of Aegis as collateral for the benefit of Mrs. Kilroy in the event that SWB required her to perform her guaranty. *Id.*

9.    Buffalo Funding LLC (**BF**) is a company formed by Mrs. Kilroy in October of 2005 that purchased the SWB loan. [Docket No. 16, ¶ 36.]

**B. Procedural Background**

10.    On October 13, 2005, Kilroy filed a voluntary Chapter 7 petition. [Main Case No. 05-90083, Docket No. 1.]

11.    On February 3, 2006, Guerriero filed a pleading titled: "Agreed Motion to Extend the Time Within Which T. Layng Guerriero and W&L Insurance Holdings, LLC May File Objections to the Dischargeability of Debt Under 11 U.S.C. § 523; and an Opposed Motion to Extend the Time Within Which T. Layng Guerriero Individually, and For the Benefit of W&L Insurance Holdings, LLC May File an Objection to Dischargeability of the Debtor Pursuant to 11 U.S.C. § 727" (the **Motion to Extend**). [Main Case No. 05-90083, Docket No. 76.]

12.    On February 22, 2006, the Court held a hearing on the opposed portion of Guerriero's Motion to Extend relating to claims under § 727.[4] [Main Case No. 05-90083, Feb. 22, 2006

---

[4] Unless otherwise noted, all section references refer to 11 U.S.C.

Hrg. on Motion to Extend.]

13. On March 3, 2006, the Court granted the Motion to Extend, a ruling which created an April 6, 2006 deadline for Guerriero and W&L to file a complaint to determine dischargeability under § 523 and/or an objection to discharge under § 727. [Docket No. 111.]

14. On April 6, 2006, Guerriero filed his original Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727 (the **Original Complaint**), initiating the above-referenced adversary proceeding. [Docket No. 1.] Guerriero brought suit against Kilroy individually, and also as a manager of W&L, as a manager of Aegis, as a manager of FAL, and as the President and CEO of CCSI. *Id.*

15. On May 11, 2006, Kilroy filed his original Motion to Dismiss Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727 (the **Original Motion to Dismiss**). [Docket No. 6.]

16. On May 31, 2006, Guerriero filed his Response to Debtor's Motion to Dismiss Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727. [Docket No. 7.]

17. On July 7, 2006, the Court held a hearing on the Debtor's Original Motion to Dismiss. [July 7, 2006 Hrg. on Debtor's Motion to Dismiss.]

18. At the July 7, 2006 hearing, counsel for Guerriero conceded that there was no extension filed on behalf of, or granted to, CCSI or FAL. The Court continued the hearing until July 19, 2006 and ordered Guerriero to amend his Original Complaint by pleading facts specific to each element of each claim. [July 7, 2006 Hrg. on Debtor's Motion to Dismiss.]

19. On July 17, 2006, Guerriero, W&L and Aegis filed a First Amended Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727 (the **First Amended Complaint**). [Docket No. 16.]

20. On July 18, 2006, Kilroy filed his Supplemental Motion to Dismiss First Amended Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727 (the **Supplemental Motion to Dismiss**). [Docket No. 17.]

4

21.    On July 19, 2006, the Court held a hearing on the Original and Supplemental Motions to Dismiss.  [July 19, 2006 Hrg. on Motion to Dismiss.]

## III.  Conclusions of Law: Initial Issues of Jurisdiction, Timeliness and Standing

### A.  Jurisdiction and Venue.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). This lawsuit is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

### B.  Aegis was not granted an extension to file an objection to discharge.

First, Kilroy argues that any claims Aegis may have had should be dismissed because the extension that Guerriero sought to file objections to claim were only requested by, and granted to, Guerriero, individually, and W&L. [Docket No. 17, ¶ 18.] The Order granting the extension to file does not include any mention of Aegis [Main Case No. 05-90083, Docket No. 111], and the Agreed Motion to Extend explicitly stated that "[t]he requested extension relates solely to the claims held by T. Layng Guerriero and W&L." [Docket No. 64, ¶ 5.]  Without an extension from the court, the deadline to file a complaint objecting to discharge under § 727 is 60 days after the first date set for the meeting of the creditors.  Fed. R. Bankr. P. 4004(a).  The date set for the first meeting of creditors was December 8, 2005. [Main Case No., Docket No. 13.]  Therefore, the deadline to file a § 727 complaint objecting to discharge was February 6, 2006.  Since the Original Complaint was not filed until April 6, 2006 and Aegis was not a party to the extension, Aegis' complaint objecting to discharge under § 727 is time barred.

Guerriero also attempts to assert claims on behalf of Aegis under § 523.  There is a similar 60-day deadline to file § 523 objections.  "A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c).  Section 523(c) includes nondischargeability complaints under § 523(2), (4), and (6).  Counts one through four of the Amended Complaint each involve these

5

provisions of § 523; and therefore, as was the case with the § 727 objections, Aegis is time barred from asserting any of these objections. However, the Amended Complaint includes a claim of nondischargeability under § 523(a)(19). Since § 523(a)(19) is not included under § 523(c), the 60-day deadline of Rule 4007(c) is inapplicable; instead, Rule 4007(b) governs. There is no deadline for complaints under any subsection of § 523 not covered by § 523(c). Fed. R. Bankr. P. 4007(b). Thus, Aegis has missed the deadline to file all complaints to dischargeability except under § 523(a)(19), which will be addressed later in conjunction with Guerriero's individual complaint under the same subsection.

**C. Does Guerriero have standing to bring a lawsuit on behalf of W&L?**

Having determined that Aegis is time-barred from filing a complaint under § 727 and § 523(c), but not under § 523(a)(19), the Court next addresses whether Guerriero has the right to bring a suit on behalf of W&L. Kilroy seeks to dismiss the Amended Complaint by arguing that Guerriero lacks standing to assert claims on behalf of W&L or Aegis. [Docket No. 17, ¶¶ 9-18.] W&L is a Limited Liability Company incorporated in Delaware with its principal place of business in Houston, Texas. *Id.* Aegis is a Delaware Limited Partnership with its principal place of business in Houston, Texas: W&L is the general partner of Aegis. *Id.* Thus, to determine the elements necessary to have standing, the Court must apply the conflict of law rules of the forum state, Texas. *See Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995); *Meyers v. Moody*, 693 F.2d 1196, 1208 (5th Cir. 1982); *Weaver v. Kellogg,* 216 B.R. 563, 585 (S.D. Tex. 1997).

The Texas Business Corporation Act states:

> [O]nly the laws of the jurisdiction of incorporation of a foreign corporation shall govern (1) the internal affairs of the corporation, including but not limited to the rights, powers and duties of its board of directors and shareholders and matters relating to its shares, and (2) the liability, if any, of shareholders of the foreign corporation for the debts, liabilities and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement.

TEX. BUS. CORP. ACT ANN. art. 8.02 (Vernon 2006). Under the Texas Business Corporation Act, standing is determined by the law of the state of incorporation since it deals with the rights, powers,

6

and duties of the shareholders. *See id.* Therefore, because W&L is a Delaware limited liability Company and Aegis is Delaware limited liability partnership, this Court must apply Delaware law to determine whether Guerriero can sue on behalf of W&L or Aegis. *See Alberto*, 55 F.3d at 203-04; *Meyers*, 693 F.2d at 1208; *Weaver*, 216 B.R. at 585.

Delaware law allows Guerriero to sue on behalf of W&L. Under the Delaware code, "[a] member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or member with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." DEL. CODE ANN. tit. 6, § 18-1001 (2005). The Limited Liability Company Act also states that in a derivative suit "the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and: (1) At the time of the transaction of which the plaintiff complains." DEL. CODE ANN. tit. 6, § 18-1002 (2005). The Delaware Code defines a member as "a person who has been admitted to a limited liability company as a member provided in § 18-301 of this title." DEL. CODE ANN. tit. 6, § 18-101(11) (2005). A person can become a member by being admitted at the formation of the limited liability company. DEL. CODE ANN. tit. 6, § 18-301 (2005). Thus, if Guerriero is a member of W&L, then he has standing to bring a suit on behalf of W&L.

In his Supplemental Motion to Dismiss, Kilroy contends that Guerriero's interest in W&L was foreclosed upon by BF on October 11, 2005, prior to Kilroy filing for bankruptcy. [Docket No. 17, ¶ 10.] Kilroy also argues that on February 23, 2006, BF and/or Mrs. Kilroy removed Guerriero as manager of W&L, and that Guerriero therefore had no authority to act on behalf of W&L. [Docket No. 17, Ex. C.] Thus, under Delaware law, Kilroy asserts that Guerriero is unable to assert a derivative claim on behalf of a limited liability company of which he is no longer a member. Guerriero argues that he continues to be a minority shareholder owning 33% of W&L. [Docket No. 16, ¶ 10.]

The statutes relating to bringing derivative suits for limited partnerships are identical to those

7

statutes for limited liability companies.   DEL. CODE ANN. tit. 6, § 17-1001 and § 17-1002 (2005). Kilroy argues that on the date that Guerriero lost ownership in W&L, he would have also automatically lost all ownership in Aegis because Guerriero's only claim to an interest in Aegis is through the share of that company that was owned by W&L as the general partner of Aegis. Therefore, Kilroy contends that Guerriero has no present interest in Aegis. [Docket No. 17, ¶ 17.] Again, Guerriero asserts that the foreclosure was invalid and never happened; and therefore, he still owns 44.55% of Aegis. [Docket No. 16, ¶ 37.]

Because ownership of W&L and Aegis and the validity of the foreclosure by BF remain factually disputed issues, the motion to dismiss cannot be granted on grounds that Guerriero lacks standing to bring derivative claims on their behalf.  "In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the [non-movant]." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).


**D.  Does Guerriero have standing as a creditor?**

Having thus determined that Guerriero is capable of bringing derivative claims on behalf of W&L and Aegis, the Court next analyzes whether Guerriero, individually, has standing as a creditor. Under the Bankruptcy Code, a creditor is defined as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A). A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Guerriero filed a proof of claim on May 17, 2006, setting forth that he has an unsecured claim of $ 5 million. [Proof of Claim No. 22.] Guerriero has a disputed potential legal claim that arose prior to the filing of bankruptcy due to the foreclosure of his stock.  The dispute over the foreclosure of stock is a disputed claim for an "unliquidated" amount.  Kilroy has not objected to Guerriero's proof of claim, and it is therefore

8

deemed valid until Kilroy does object and this Court sustains his objection. *In re Simmons*, 765 F.2d 547, 556 (5th Cir. 1985). Therefore, as of this date, Guerriero is a creditor and as such has standing to object to discharge.

In sum, the Court has found that Guerriero has standing to bring claims on behalf of himself, W&L, and Aegis. However, because Aegis did not seek an extension to file a nondischargeability complaint, the only section under which Aegis still has a valid cause of action is § 523(a)(19). Next, the Court considers whether sufficient facts have been pled for each of the counts in the Amended Complaint.

## IV. Conclusions of Law: Guerriero's claims under §§ 523 and 727

### A. Standard of Review

Kilroy contends that Guerriero's First Amended Complaint fails to plead with particularity under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), or (a)(19). [Docket No. 17, ¶ 5.] Kilroy seeks dismissal of Guerriero's objections under Federal Rule of Civil Procedure 12(b)(6) and, where applicable, 9(b), which states "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." This rule has been incorporated into the Bankruptcy Code as Bankruptcy Rule 7009.

### 1. 11 U.S.C. § 523

The Amended Complaint includes a total of seven claims under § 523 (a)(2)(A), (a)(2)(B), (a)(4), (a)(6), (a)(19) and § 727(a)(2) and (a)(5). According to Rule 9(b), only allegations that involve fraud or mistake are required to be pled with greater particularity than under Rule 12(b)(6). Sections 523(a)(2)(A) and (a)(4) both explicitly include the word "fraud," and therefore, these claims are clearly subject to Rule 9(b). Although § 523(a)(2)(B) does not specifically use the phrase "fraud," it does require a written statement that is "materially false.". Therefore, this subsection is also subject to Rule 9(b). *McCallion v. Lane (In re Lane)*, 937 F.2d 694, 699 (1st Cir. 1991)

(citations omitted) (applying Fed R. Civ. P. 9(b) to causes of action under § 523(a)(2)(B)).

Section 523(a)(19) requires a showing of either a violation of a federal or state securities law or, in the alternative, common law fraud. The 1995 passage of the Private Securities Litigation Reform Act (PSLRA) reinforced the requirements of rule 9(b). *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 637 (S.D. Tex. 2001). Thus, for private securities causes of actions, the pleading requirement is that "'the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Baker Hughes*, 136 F. Supp. 2d at 637-38 (quoting 15 U.S.C. § 78u–4(b)(1)). Accordingly, whether a claim is brought under § 523(a)(19) as either a securities law violation or a case of common law fraud, Rule 9(b) applies.

The only § 523 claim brought by Guerriero that is not subject to the heightened pleading requirement of Rule 9(b) is § 523(a)(6), which requires a willful and malicious injury but contains no mention of fraud and is therefore analyzed under the regular scrutiny of Rule 12(b)(6).

### 2. 11 U.S.C. § 727

Guerriero has also pled two claims under § 727 in the Amended Complaint. Section 727(a)(2) requires a showing that the debtor acted "with intent to hinder, delay or defraud." Because a fraudulent intent is required, § 727(a)(2) is subject to Rule 9(b). However, a claim under § 727(a)(5) does not require a showing of such fraudulent intent. Rather, the claimant only need show that the "debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets." Since no fraud is involved in this cause of action, § 727(a)(5) is only subject to review under Rule 12(b)(6).

### 3. Requirements of Rule 9(b)

Rule 9(b), which is made applicable by Bankruptcy Rule 9009, requires that fraud be pled with particularity. The Fifth Circuit requires that "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that

10

person] obtained thereby'" be pled. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Essentially, "the who, what, when, and where must be laid out *before* access to the discovery process is granted." *ABC Arbitrage*, 291 F.3d at 349 (quoting *WMX Techs.*, 112 F.3d at 178). To prevent dismissal of the complaint for failure to plead with particularity, the plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (quoting *WMX Techs.*, 112 F.3d at 177). To plead scienter "'requires more than a simple allegation that a defendant had fraudulent intent ... a plaintiff must set forth *specific facts* that support an inference of fraud.'" *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668 (5th Cir. 2004) (unpublished opinion) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

## B. Guerriero's pleading of general facts applicable throughout the seven different complaints to determine dischargeability and objections to discharge

In the First Amended Complaint, Guerriero initially pleads a broad set of facts upon which each of the subsequent seven complaints under § 523 and § 727 are based. These facts relate to two different alleged "wrongs."

First, Guerriero alleges that Kilroy, who had appointed himself the Chairman, President, and CEO of FAL, withdrew corporate funds of CCSI for personal use without approval or any accounting of these transactions.[5] [Docket No. 16, ¶ 15.] Prior to this time, Guerriero had executed a proxy assigning his voting control over his shares of Aegis to Kilroy, which would not be released "until the full repayment to Kilroy of all Capital Contributions and optional Partner Loans." [Docket No. 16, ¶ 11.] Guerriero claims that Kilroy's misuse of CCSI funds harmed Guerriero and Aegis by "intentionally increasing the debt that controlled the Proxy without receiving any value in return."

---

[5] Aegis owns 67% of FAL, and FAL in turn owns CCSI. [Docket No. 16, ¶ 14.]

[Docket No. 16, ¶ 26.]

Second, Guerriero alleges facts related to what he characterizes as a collusive agreement between Kilroy and Mrs. Kilroy to deprive him of his ownership interests in Aegis, W&L, FAL, and CCSI. While Guerriero was still employed at these various business ventures, and still believed that Kilroy and Mrs. Kilroy were working in his and the corporations' best interest, Kilroy sought a loan from SWB. [Docket No. 16, ¶ 33.] At the time the loan was made, Guerriero believed that the proceeds of the loan would be used on behalf of Aegis and to make the final payments on CCSI. *Id.* Guerriero now alleges that the funds were used to pay for Kilroy's personal debts. *Id.* In order to acquire this loan, SWB required Mrs. Kilroy to co-sign the note. *Id.* Guerriero pledged his shares of Aegis[6] "as collateral for the benefit of LJ Kilroy in the event SWB ever required LJ Kilroy to perform pursuant to her guaranty of Kilroy's debt." *Id.* This action is hereinafter referred to as (the Stock Pledge). In October of 2005, Mrs. Kilroy formed BF, and under that company's name purchased from SWB the note that Kilroy had executed. [Docket No. 16, ¶ 36.] Thereafter, Kilroy defaulted on the loan and Mrs. Kilroy foreclosed on the stock in Aegis owned by Guerriero and Kilroy. *Id.* Guerriero challenges the validity of the foreclosure alleging that: (a) because Mrs. Kilroy was never required to pay her guaranty on the loan, she had no right to foreclose on his shares of Aegis; and (b) the foreclosure sale of W&L by Mrs. Kilroy is invalid because the W&L stock was not part of the Stock Pledge. [Docket No. 16, ¶ 37.]

Having reviewed both of Guerriero's main factual allegations, the Court next considers each of the seven objections to discharge separately to determine whether they have been sufficiently pled.

## C. Guerriero's Seven Objections to Discharge

### 1. § 523(a)(2)(A)

In order to establish an exception to discharge of a debt for "money, property, services, or

---

[6] Guerriero and Kilroy each owned 44.5% of Aegis, W&L was the general partner owning 1% of the company, and the final 9.9% was owned by Mrs. Kilroy. [Docket No. 16, ¶ 10.]

an extension, renewal, or refinancing of credit," the debt must have been obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The creditor has to "prove by a preponderance of evidence that the debt is nondischargeable." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed.2d 755 (1991)). Additionally, the Fifth Circuit has maintained a distinction between actual fraud and false pretenses or representations. *See RecoverEdge*, 44 F.3d at 1292-93 (citations omitted).

### a. False Representation or False Pretenses

The Fifth Circuit has explained that "for a debtor's representation to be a 'false representation or false pretense' under § 523(a)(2), it 'must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied on by another party." *RecoverEdge L.P.*, 44 F.3d at 1292-93 (citations omitted).

First, Guerriero alleges that the "knowing and fraudulent falsehood" was that Kilroy induced him to make the Stock Pledge by promising that the loan proceeds would benefit FAL and that Kilroy would ensure the loan was repaid. Guerriero further alleges that Kilroy knew he would not pay off the loan in order to facilitate the plan with Mrs. Kilroy, and this falsehood was made in order to seize possession, control, and ownership of Guerriero's property. [Docket No. 16, ¶ 50.] Second, Guerriero alleges that the "current fact" that was falsely made in connection with the Stock Pledge was that the loan proceeds were to be for the benefit of FAL and that Kilroy intended to repay the debt to SWB. *Id.* Finally, in agreeing to allow Kilroy to use his shares of stock as collateral for the loan, Guerriero relied on Kilroy's statement that the loan would be repaid and the lien released. *Id.* Thus, this Court finds that false representation or false pretenses have been pled with particularity as required by Rule 9(b).

Kilroy's response to Guerriero's allegations is that there is no "debt" because the Stock Pledge did not create any monetary obligation towards Guerriero. [Docket No. 17, ¶ 39.] This argument fails to see the broad definition of debt in the context of bankruptcy. "Debt" is defined

13

under the Code as "liability on a claim." 11 U.S.C. § 101(12).  A "claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).  Under this expansive definition, Guerriero has a "claim" against Kilroy; therefore, a "debt" exists pursuant to the Code. Next, Kilroy argues that the misrepresentations were as to future facts and not present facts. [Docket No. 17, ¶ 40.] It is true that the use of the funds and the promise to repay referred to actions that would necessarily take place in the future.  However, the misrepresentations concern the present intention and state of mind of Kilroy when asking Guerriero to make the Stock Pledge.  Therefore, this Court finds that Guerriero has pled false representation or pretenses under § 523(a)(2)(A) with sufficient particularity.

Guerriero's other set of facts allege that Kilroy misused CCSI funds for personal use. Guerriero fails to explain how these facts relate to misrepresentations that were made to him individually or to W&L.  [Docket No. 16, ¶¶ 51-53.]  It would appear that any misrepresentations were made to CCSI, its employees and shareholders only.  Thus, Guerriero has failed to plead with particularity regarding this other set of facts.  In sum, Guerriero may go forward under a false representations or pretenses claim only based on the facts plead relating to the Stock Pledge.

### b. Actual Fraud

To maintain non-dischargeability under actual fraud:

[T]he objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations."

*RecoverEdge L.P.*, 44 F.3d at 1293 (citing *Keeling v. Roeder (In re Roeder)*, 61 B.R. 179, 181 (W.D. Ky. 1986)).

Guerriero's First Amended Complaint does not recognize the division that the Fifth Circuit makes between false representations and actual fraud.  Therefore, this Court must interpret his pleading as alleging identical facts for both.  The first four elements were all discussed above under

false representations. For element one, the misrepresentation was that the funds were to be used for the benefit of FAL and that Kilroy intended to repay the debt to SWB. For element two, Guerriero alleges that, at the time of obtaining the Stock Pledge, Kilroy had already conspired with Mrs. Kilroy, and they had together decided that the funds would be used for Kilroy's personal affairs and that he would not repay the debt. For element three, Guerriero alleges that the purpose of this plot with Mrs. Kilroy was to deceive Guerriero out of his interest in Aegis and the other ventures. For element four, Guerriero claims that he relied on these representations because if he had known of the true intentions of Kilroy and Mrs. Kilroy, he would have never made the Stock Pledge. Element five is the only element that was not analyzed under false representations. The losses that Guerriero claims are his shares in Aegis, which were allegedly foreclosed on by Mrs. Kilroy and sold back to Kilroy and Mrs. Kilroy. [Docket No. 16, ¶¶ 36-37.] Thus, the Court finds that actual fraud has been pled with particularity as required by Rule 9(b).

The same deficiencies that apply to Kilroy's transactions with CCSI under false pretenses apply equally under actual fraud, and Guerriero has failed to plead those facts with particularity.

### 2. § 523(a)(2)(B)

To establish an exception to discharge for fraud, Guerriero must demonstrate that there was:

use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor cause to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). All four of these elements are questions of fact "which the creditor must prove by a preponderance of the evidence." *Norris v. First Nat'l Bank of Luling (In re Norris),* 70 F.3d 27, 29 (5th Cir. 1995).

In his First Amended Complaint, Guerriero fails to demonstrate that Kilroy gave him a written statement of any kind for either the Stock Pledge or the personal use of CCSI funds. [Docket No. 16., ¶¶ 55-59] At the July 19, 2006 hearing on the Debtor's Motion to Dismiss, counsel for Guerriero admitted: (1) that Guerriero was never physically handed a written statement of any kind; (2) rather, that he was shown some financial documents on which he based his decision; and (3) that

15

these documents were never formally given to him as a written statement for the loan, but were only prepared for, and delivered to, SWB. Under these circumstances, this Court finds that Guerriero's First Amended Complaint must be dismissed as to the action pled under § 523(a)(2)(B).

### 3. § 523(a)(4)

Guerriero also argues that Kilroy's debt to him is nondischargeable based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The exception to discharge under § 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir. 1987)(citations omitted). Each of these three theories of nondischargeability–embezzlement, larceny, and fraud or defalcation by a fiduciary–require analysis of separate elements.

### a. Fraud or Defalcation while acting in a fiduciary capacity

In order to establish an exception to discharge under § 523(a)(4), the movant must show the existence of a fiduciary duty that was breached by fraud or defalcation. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 171, 184 (5th Cir. 1997).

An analysis of nondischargeability under § 523(a)(4) "involves a two-step process–state law is consulted to determine whether the requisite trust exists; however, the fiduciary nature of the relationship ultimately remains a federal question. *Clarendon Nat'l Ins. Co. V. Barrett (In re Barrett)*, 156 B.R. 529, 533 (Bankr. N.D. Tex. 1993)(citations omitted). "[T]he concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract." *LSP Inv. P'ship v Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993) (citing *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980)). "In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law. The scope of the concept of fiduciary

under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.*(citing *Angelle*, 610 F.2d at 1339).

Guerriero argues that as the majority shareholder and "managing partner of W&L and Aegis ... Kilroy owed a fiduciary duty to Guerriero, W&L and Aegis." [Docket No. 16, ¶61.]  Under Delaware law,[7] majority shareholders are controlling shareholders as a matter of law.  *Lewis v. Knutson*, 688 F.2d 230, 235 (5th Cir. 1983).  Even if a party does not own more than 50% of the shares of a corporation, a fiduciary duty will still be imposed under Delaware law "if a shareholder exercises actual control and direction over corporate management." *Id.* (citing *Harriman v. E.I. DuPont de Nemours & Co.*, 411 F. Supp. 133, 152 (D.Del. 1975)).  Here, Kilroy argues that any fiduciary relationship could have only existed from their relationship as equal limited partners in Aegis, each individually owning 44.5% of the stock. [Docket No. 17, ¶ 56; *see also* Docket No. 16, ¶ 10.] Guerriero points out that Kilroy was at all times the majority shareholder and manager of W&L. [Docket No. 16, ¶ 10.] W&L, under the control of Kilroy, was the general partner of Aegis. *Id.*  Additionally, Guerriero alleges that Mrs. Kilroy, who owned 9.9% of Aegis, was working together with Kilroy to exercise majority ownership control over Aegis. [Docket No. 16, ¶ 10.] Based on these allegations, this Court finds that Guerriero has sufficiently alleged that Kilroy exercised actual control over the operation of W&L and Aegis which would establish that Kilroy owed a fiduciary relationship to Guerriero.

Defalcation is defined as "'a willful neglect of duty, even if not accompanied by fraud or embezzlement.'" *In re Schwager*, 121 F.3d at 182.  Willful neglect by a person owing a fiduciary duty is evaluated by a "recklessness standard." *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001) (citations omitted).  Because willfulness is evaluated objectively, it "charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." *Id.* at 226 (citations omitted).  Thus, the fiduciary is "presumed to know his legal

---

[7] As discussed *supra* Sec. III. C., Delaware law applies in this case rather than Texas law because both W&L and Aegis are Delaware entities.

obligations." *Id.* at 227.  Here, Guerriero alleges a number of ways in which Kilroy has mismanaged the various business ventures–Aegis, W&L, FAL, and CCSI. [Docket No. 16, ¶¶ 62-67.] This Court must again focus on who the proper plaintiffs are in the First Amended Complaint.  As to Guerriero individually, he has pled that as the minority partner in Aegis, he was owed a fiduciary duty by Kilroy–and presumably Mrs. Kilroy if they were operating the business as a single unit as Guerriero alleges–and that it was either actual fraud or at least defalcation for Kilroy to intentionally burden Aegis with debt in order to manipulate Guerriero out of his interest in the company through the Stock Pledge. [Docket No. 1

6, ¶ 67.]

The remainder of the facts pled involve the mismanagement of CCSI and FAL, no longer a plaintiff in this suit; it is only W&L who remains. [Docket No. 16, ¶ 62-66.] Again, W&L was the general partner and 1% owner of Aegis; Aegis owned 67% of FAL; FAL in turn owned 100% of CCSI.  The fiduciary relationship that would have existed between Kilroy and W&L is too far removed to be breached by the alleged misconduct of Kilroy in his operation of CCSI.  In conclusion, Guerriero has satisfactorily stated a claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity as to his claim individually, but not for W&L.

### b. Embezzlement and Larceny

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property was entrusted, or in whose hands it has lawfully come." *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (N.D. Tex. 2000) (citing *Millver v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598; *RAI Credit Corp. v. Patton (In re Patton)*, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991)). Embezzlement requires a showing that: "(1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." *In re Hayden*, 248 B.R. at 526 (footnotes, citations, and emphasis omitted). Larceny is "'the fraudulent and wrongful taking away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property." *Id.* at 525 (citations and

emphasis omitted).

All of the allegations made in the First Amended Complaint focus on Kilroy's diversion of CCSI funds to himself for personal use without any intention of repaying them. [Docket No. 71, ¶ 71.] Therefore, it appears that Guerriero is alleging that the Stock Pledge constituted a defalcation that occurred while Kilroy owed Guerriero a fiduciary duty. Moreover, it appears that Guerriero is alleging that Kilroy's taking of funds from CCSI was a larceny or embezzlement. As previously stated, CCSI is no longer a plaintiff in this adversary proceeding. The claim for any debt that would have been created by Kilroy's alleged embezzlement or larceny would belong to CCSI, not Guerriero or W&L. Thus, the Court finds that Guerriero has sufficiently pled a claim under § 523(a)(4) for defalcation while acting in a fiduciary capacity; however, the Court finds that Guerriero has failed to sufficiently plead a claim for embezzlement or larceny with particularity as required by Rule 9(b). Accordingly, Guerriero's embezzlement or larceny claim is dismissed.

### 4. § 523(a)(6)

Another objection to discharge filed by Guerriero is for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Fifth Circuit has defined the test for willful and malicious as "where there is either an objective substantial certainty of harm or subjective motive to cause harm." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (citing *In re Miller*, 156 F.3d at 606; *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003)). Also, "the debtor must have intended the actual injury that resulted and not just performed an intentional act that resulted in injury." *Miller*, 156 F.3d at 603. As discussed previously, this section does not necessitate the pleading of fraud; and therefore, the heightened pleading requirement of Rule 9(b) is inapplicable.

As to Guerriero individually, he pleads that the Stock Pledge was a scheme concocted by Mrs. Kilroy and Kilroy for the purpose of eliminating Guerriero from the management of the company and effectively denying him any return on his ownership interest in Aegis. [Docket No. 16, ¶ 75.] This claim presents a close call. Assuming, as this Court must under this motion to dismiss,

19

that the facts alleged by the non-movant are true,[8] then Mrs. Kilroy and Kilroy conspired together to obtain the Stock Pledge from Guerriero with the intent of inflicting a particular harm: divesting Guerriero of any interest in the various business entities without giving him any compensation in return. Therefore, the actions of Kilroy acting in concert with Mrs. Kilroy would satisfy the requirements of a wilful and malicious injury under § 523(a)(6).

As to any injuries wilfully and maliciously done to W&L, Guerriero relies on the mismanagement of the various entities and their various stakes in each other as the only factual basis for his claim. In his First Amended Complaint, Guerriero alleges that "Kilroy also intentionally caused financial harm and damages to W&L, Aegis, FAL and CCSI through the improper diversion of funds to himself and others and through his mismanagement and neglect of the business." [Docket No. 16, ¶ 76.] Even without the higher pleading requirements of Rule 9(b), this statement fails to state a claim under Rule 12(b)(6). Therefore, any claim of W&L under § 523(a)(6) is dismissed.

### 5. § 523(a)(19)

Guerriero's final objection to discharge under § 523 is for a violation of federal and/or state security laws. [Docket No. 16, ¶ 81.] Section 523(a)(19) states that an objection can be filed for "the violation of any federal securities laws . . . any of the State securities laws . . . and results, before, on, or after the date on which the petition was filed, from– (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding . . . ." 11 U.S.C. § 523(a)(19). This section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to allow debts for the federal security violations to be nondischargeable regardless of when the judgment or order is obtained in relation to the filing of the petition for bankruptcy. *SEC v. Sunbelt Dev. Corp.*, Civ. Action No. 97-1387, 2006 U.S. Dist. LEXIS 11959, at * 1, 15 (W.D. La. March 1, 2006)(unpublished opinion). Congress amended the

---

[8] *See Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)(citing *Sloan v. Sharp*, 157 F.3d 980, 982 (5th Cir. 1998)).

section with the intent of making "judgements and settlements arising from state and federal securities law violations brought by state or federal regulators or private individuals non-dischargeable." *Idaho v. McClung (In re McClung)*, 304 B.R. 419, 425 (Bankr. D. Idaho 2004) (citing S. Rep. No. 107-146, at 11 (2002)). However, "[t]he party seeking to establish an exception to the discharge of debt bears the burden of proof." *Peterman v. Whitcomb (In re Whitcomb)*, 303 B.R. 806, 809-10 (Bankr. N.D. Ill. 2004) (citing *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995)).

Guerriero includes two derivative suits for violations of securities laws in his First Amended Complaint. The first suit was a derivative action brought in Bexar County by the investors in FAL against Kilroy, FAL, and Aegis for violations of the Texas Securities Act. [Docket No. 16, ¶ 24.] This suit resulted in a jury verdict in favor of FAL, against Kilroy and FAL for $ 1,619,442.34, and against Aegis for $ 1,417,096.98. At the July 19, 2006 hearing, counsel for Guerriero admitted that the state court judgment did not result in a debt owed to Guerriero. [Hrg. of July 19, 2006.] Neither W&L nor Guerriero were plaintiffs in that suit; and therefore, there is no "debt" owed to either of them arising out of that suit. Without having any debt arising from a securities violation, it is impossible for either party to successfully plead a claim under § 523(a)(19) relating to this Bexar County suit. As discussed earlier, Aegis was time barred from bringing a claim under all sections except for § 523(a)(19). Ironically, under the one section that it could bring a claim, Aegis was a defendant with over a million dollar judgment against it, rather than a plaintiff owed a debt. Additionally, there is no mention of any claim for indemnity or contribution that Aegis could possibly have against FAL. Therefore, Aegis also fails to state a claim under § 523(a)(19) because it has no debt arising out of this state court judgment.

Second, Guerriero alleges that another shareholder derivative suit was filed and is currently pending in the 127th Judicial District Court in Harris County, Texas, cause number 2004-69523. [Docket No. 16 ¶ 81.] Because of the BAPCPA amendments to § 523(a)(19)(B) discussed above,

it is no longer fatal that a judgment was not entered in this suit pre-petition. Here, the main case was filed prior to October 17, 2005, the effective date of BAPCPA, and therefore the prior version of § 523(a)(19) applies despite the fact that the adversary proceeding was filed after the effective date.[9] The Harris County lawsuit is pending without a judgment or order, and thus the complaint under § 523(a)(19) must be dismissed. Additionally, Guerriero does not specify what, or even if, this suit involves a claim involving a violation of a securities law. Instead, Guerriero says that the suit is based on "Kilroy's continuing malfeasance." [Docket No. 16, ¶ 25.] This generic language reinforces the point that it is not possible for Guerriero to plead a claim under this section and therefore all claims related to the Harris County suit under § 523(a)(19) are dismissed.

### 6. § 727(a)(2)

As a creditor, established in the discussion above, Guerriero also objects to discharge under 11 U.S.C. § 727(a)(2), which states:

> The court shall grant the debtor a discharge, unless–
> (2) the debtor, with intent to hinder, delay or defraud a creditor or officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

To establish a denial of discharge under § 727(a)(2)(A), the creditor must demonstrate four elements: "'(1) a transfer [removal, destruction or concealment] of property; (2) belonging to the debtor; (3) within one year of the filling of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Cadle Co. v. Pratt* (*In re Pratt*), 411 F.3d 561, 565 (5th Cir. 2005) (quoting *Pavy v. Chastant* (*In re Chastant*), 873 F.2d 89, 90 (5th Cir. 1989)). Additionally, in proving the intent to defraud, the standard is actual intent, not constructive intent.

---

[9]"[T]he amendments made by this Act shall not apply with respect to *cases commenced* under title 11, United States Code, before the effective date of this Act." BAPCPA, 109 P.L. 8 § 1501(b)(1) (emphasis added); *see also, Kelsay v. Office of Lawyer Regulation*, 2006 U.S. Dist. LEXIS 72456 at *2 (E.D. Wisc. Oct. 4, 2006) ("Since issues involved in the adversary proceeding will be issues spawning from the main bankruptcy case, the law governing that main bankruptcy case will govern the adversary proceeding.").

*Id.* However, "'actual intent . . . may be inferred from the actions of the debtor and may be proven by circumstantial evidence.'" *Id.* Initially, the "burden of proof falls on the creditor to prove that the case falls within one of the § 727(a) exceptions by a preponderance of the evidence." *Cadle Co. v. Preston-Guenther (In re Guenther)*, 333 B.R. 759, 763 (Bankr. N.D. Tex. 2005) (citations omitted). After this presumption is satisfied, "the burden shifts to the debtor '[to demonstrate] that he lacked fraudulent intent.'" *In re Pratt*, 411 F.3d at 566 (quoting *In re Chastant*, 873 F.2d at 91).

Guerriero alleges that "Kilroy transferred property of the estate to LJ Kilroy and/or entities controlled by himself or LJ Kilroy by encumbering the property with liens in order to hinder, delay and defraud creditors." [Docket No. 16, ¶85.] Additionally, Guerriero alleges that prior to filing of bankruptcy, Mrs. Kilroy and/or BF foreclosed on a majority of Kilroy's assets pursuant to a prior agreement and conspiracy between Mrs. Kilroy and Kilroy to defraud Kilroy's creditors. *Id.* Indeed, at the July 19, 2006 hearing, counsel for Guerriero argued that the transfer of assets in this section of the First Amended Complaint referred to Kilroy's continued pattern of encumbering the assets of the various business entities so that Mrs. Kilroy could then liquidate all Guerriero's interest.

Nowhere does the First Amended Complaint state which dates these security interests were granted to either SWB or BF. In his Supplemental Motion to Dismiss, Kilroy points out that the original pledge of assets as security to SWB, which Kilroy is arguing was procured by fraud, occurred in 2001, and it was only the foreclosure that occurred within the last year. [Docket No. 17, ¶ 81.] Under the Code, a "transfer" of property includes granting a security interest in that property and also a foreclosure. *See* 11 U.S.C. § 101(54). However, under § 727(a)(2), the transfer must have been made with "intent to hinder, delay or defraud." In the First Amended Complaint, Guerriero alleges under § 727(a)(2) that "LJ Kilroy and/or Buffalo Funding, LLC conducted a foreclosure sale of a majority of the Debtor's assets. This action was taken pursuant to the agreement and conspiracy between Kilroy and LJ Kilroy to defraud Kilroy's creditors." [Docket No. 16, ¶ 85.] Although it is not clear from a simple reading of the First Amended Complaint, the Court believes that Guerriero is asserting that the foreclosure happened within one year of the filing of the petition, and that

foreclosure by Mrs. Kilroy was merely another piece of the conspiracy to defraud Guerriero out of his interest in the business ventures. Although under normal circumstances a foreclosure sale would lack the requisite fraudulent intent, if Guerriero is able to establish the conspiracy between Mrs. Kilroy and Kilroy, then it is clear that the intent to defraud Guerriero began with the Stock Pledge and continued until the foreclosure. Thus, the Court finds that Guerriero's complaint under § 727(a)(2) has been pled with particularity as required by Rule 9(b).

### 7.  § 727(a)(5)

Because Rule 9(b) only applies to fraud and § 727(a)(5)does not involve fraud, the Court construes Kilroy's argument for dismissal of Guerriero's objection to discharge as a 12(b)(6) objection for failure to state a claim. *See Calhoun*, 312 F.3d at 733. When evaluating a 12(b)(6) motion, the "complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Woodard*, 419 F.3d at 351 (citing *Sloan*, 157 F.3d at 982).

Under § 727(a)(5), "[t]he court shall grant the debtor a discharge, unless– . . . (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The objecting creditor has the burden of proof under § 727(a)(5). *Martin Marietta Materials Southwest, Inc v. Lee (In re Lee)*, 309 B.R. 468, 478 (Bankr. W. D. Tex. 2004). To establish a prima facie case, the creditor "must prove which assets are 'missing.'" *Id.* (citing *In re Sanders*, 128 B.R. 963, 974 (Bankr. W. D. La. 1991). Once the creditor can establish a prima facie case, "the burden then shifts to the debtors to provide a satisfactory explanation for that loss." *Id.*; *see also*, *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984)).

Guerriero alleges that Kilroy "has failed to satisfactorily explain the loss of substantial property of the estate." [Docket No. 16, ¶ 88.] Specifically, Kilroy has failed to account for the loss of property transferred to Mrs. Kilroy, and/or Buffalo Funding, and other entities controlled by Kilroy and Mrs. Kilroy. [Docket No. 16, ¶ 88.] Kilroy asserts that all assets have been disclosed and scheduled. [Docket No. 17, ¶ 85.] Kilroy further argues that a foreclosure of assets is not a loss of

24

assets.  [Docket No. 17, ¶ 86.]

Kilroy mischaracterizes the meaning of the "loss" of an asset.  Kilroy would have this Court find that the assets were not "lost" because Mrs. Kilroy foreclosed upon the assets, and Kilroy disclosed the foreclosure.  Thus, it appears that Kilroy believes that the "loss" of these and other assets is satisfactorily explained by stating that their ownership and location have been accounted for.  This is not the meaning of "loss" under § 727(a)(5).  Kilroy will have to explain more than where the assets went; what is most important is how they ended up there, specifically in possession of his mother, Mrs. Kilroy.  Therefore, this Court finds that Guerriero has pleaded with sufficient particularity regarding transfer of assets to state a claim under § 727(a)(5).

# V.  CONCLUSION

The First Amended Complaint claims seven different objections to discharge under §§ 523 and 727 on behalf of Guerriero, W&L, and Aegis.  Kilroy's Supplemental Motion to Dismiss seeks to dismiss each one of these seven claims for failure to state a claim upon which relief may be granted.  Aegis is time barred from bringing all claims, except claims pursuant to § 523(a)(19).  Under that section, Aegis could not state a claim because it owes the debt at issue rather than the debt being owed to it.  Thus, Kilroy's Motion to Dismiss is granted in its entirety as to any claims by Aegis.  As to the remaining claims of W&L and Guerriero, individually, the Court rules as follows:

(1) § 523(a)(2)(A) - Guerriero has stated a claim for false representations or pretenses and also actual fraud in relation to the Stock Pledge.  Therefore, the Motion to Dismiss is denied as to those claims and granted as to any other claims under this section.

(2) § 523 (a)(2)(B) - Guerriero has been unable to establish that any statement in writing was used in the allegations in the First Amended Complaint.  Therefore, the Motion to Dismiss is granted as to all claims under this section.

(3) § 523 (a)(4) - Guerriero sufficiently pleaded facts for a claim of fraud or defalcation while

25

acting in a fiduciary capacity. However, with respect to embezzlement and larceny, the facts in the First Amended Complaint relate to a claim belonging to CCSI, which is no longer a plaintiff in this suit. Therefore, the Motion to Dismiss is denied as the fraud or defalcation in a fiduciary capacity, but is granted as to embezzlement and larceny.

(4) § 523 (a)(6) - For willful and malicious injury, Guerriero, in his individual capacity, has been able to state a claim, but has failed to state a claim as to W&L. Therefore, the Motion to Dismiss is denied as to Guerriero, individually, and granted as to W&L under this section.

(5) § 523 (a)(19) - Neither Guerriero nor W&L were plaintiffs in the state securities lawsuits referenced in the First Amended Complaint. Therefore, the Motion to Dismiss is granted to all claims by both parties under this section.

(6) § 727(a)(2) - Guerriero alleges a conspiracy between Kilroy and Mrs. Kilroy to defraud him out of his ownership interest in the parties' various business ventures. Because some of the alleged actions in this conspiracy occurred within a year before filing, Guerriero has stated a claim under this section and the Motion to Dismiss is denied as to this section.

(7) § 727(a)(5) - Finally, Guerriero has sufficiently pled facts regarding losses of assets by Kilroy that have not been sufficiently explained; therefore, the Motion to Dismiss is denied as to this section.

A separate order consistent with this Memorandum Opinion will be entered on the docket.

Signed on this 30th day of October, 2006.

Jeff Bohm
U.S. Bankruptcy Judge

26