

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/24/2008

| | |
|---|---|
| IN RE: § | |
| § | |
| WILLIAM S. KILROY, JR. § | Case No. 05-90083-H4-7 |
| § | |
| Debtor § | Chapter 7 |
| § | |
| T. LAYNG GUERRIERO and § | |
| W & L INSURANCE HOLDINGS § | Adv. No. 06-3320, |
| COMPANY, L.L.C. § | Consolidated with |
| Plaintiffs § | Objection to Claim No. 22 |
| § | |
| vs. § | |
| § | |
| § | |
| WILLIAM S. KILROY, JR. § | |
| Defendant § | |

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
[Docket No. 48]

### I.

On October 30, 2006, this Court issued a memorandum opinion on the Defendant's Supplemental Motion to Dismiss this adversary proceeding (hereinafter referred to as the Opinion on the Motion to Dismiss). [Docket No. 20.] The Court dismissed two claims brought by the Plaintiff and denied the Motion to Dismiss as to the remaining five claims.[1] The Defendant appealed the denial of its Motion to Dismiss the Plaintiff's claim under 11 U.S.C. § 727(a)(5).[2] [Docket No.

---

[1] Although both T. Layng Guerriero and W&L Insurance Holdings Company, L.L.C. (W&L) are listed as plaintiffs in this adversary proceeding, Guerriero is essentially the sole plaintiff. In the Opinion on the Motion to Dismiss, this Court concluded that Guerriero has standing to assert derivative claims on behalf of W&L. Guerriero alleges the same set of facts that caused him damage also damaged W&L, but W&L has no factually independent claims. Therefore, throughout this Memorandum Opinion, the Court uses the singular Plaintiff.

[2] Unless otherwise noted, all section references hereinafter shall refer to 11 U.S.C., and all references to the "Code" or "Bankruptcy Code" shall refer to the United States Bankruptcy Code.

29.] While this appeal was pending in the District Court for the Southern District of Texas, this Court abated this adversary proceeding. On May 15, 2007, the Honorable Kenneth M. Hoyt, United States District Judge, affirmed this Court's denial of Defendant's Motion to Dismiss the Plaintiff's claim under 11 U.S.C. § 727(a)(5). [Docket No. 49.] As a result of the District Court's affirmance of this Court's ruling, this Court issued an amended scheduling order setting forth the discovery deadlines and a trial setting. [Docket No. 46.] Since the entry of the amended scheduling order on the docket, the parties have conducted discovery.

On January 31, 2008, the Defendant filed his Motion for Summary Judgment. [Docket No. 48.] On February 28, 2008, the Court held a hearing on the Defendant's objection to the Plaintiff's proof of claim filed in the main bankruptcy case. At the conclusion of this hearing, the Court consolidated the trial on this adversary proceeding with the objection to claim. [Docket No. 50.] Shortly after this hearing, the Plaintiff filed his Response to the Motion for Summary Judgment. [Docket No. 51.] Subsequently, the Defendant filed a Reply to the Plaintiff's Response. [Docket No. 53.] For the reasons stated herein, the Court grants the Motion for Summary Judgment in part and denies it in part. Rather than rehash the rather complex factual background between the parties and the various entities that they have, or have had, interests in, the Court incorporates into this Memorandum Opinion all of the factual and procedural findings contained in the Opinion on the Motion to Dismiss.

## II.

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that a court may grant summary judgment only if there is "no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant then must present affirmative evidence showing a genuine issue of material fact. *Id.*; FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("The opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Material facts are those that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Stafford v. True Temper Sports*, 123 F.3d 291, 294 (5th Cir. 1997). The Court must "construe all evidence in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation*, 98 F.3d 179, 181 (5th Cir. 1996). "If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (U.S. 1986).

## III.

### A. The Motion for Summary Judgment as to Plaintiff's cause of action under § 727(a)(2) is denied.

11 U.S.C. § 727(a)(2) provides that:

"The court shall grant the debtor a discharge, unless–
. . . .
(2) the debtor, with intent to hinder, delay or defraud a creditor or officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition."

To establish a denial of discharge under § 727(a)(2)(A), the creditor must demonstrate four elements: "'(1) a transfer [removal, destruction or concealment] of property; (2) belonging to the debtor; (3) within one year of the filling of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005) (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989)). Additionally, in proving the intent to defraud, the standard is actual intent, not constructive. *Id.* However, "'actual intent . . . may be inferred from the actions of the debtor and may be proven by circumstantial evidence.'" *Id.* Initially, the "burden of proof falls on the creditor to prove that the case falls within one of the § 727(a) exceptions by a preponderance of the evidence." *In re Guenther*, 333 B.R. 759, 763 (Bankr. N.D. Tex. 2005) (citations omitted). After this presumption is satisfied, "the burden shifts to the debtor '[to demonstrate] that he lacked fraudulent intent.'" *In re Pratt*, 411 F.3d at 565-66.

Regarding the Plaintiff's §727(a)(2) claim, the Motion for Summary Judgment made two arguments: (1) the transfer alleged by the Plaintiff did not occur within one year of the petition date; and (2) the Plaintiff has shown insufficient evidence of fraudulent intent.

The Motion for Summary Judgment states that "the only transfer identified that could be the subject of Guerriero's § 727(a)(2) action is Kilroy's pledge of his various interests for the SWB Loan." The Court disagrees. As previously stated in the Opinion on the Motion to Dismiss, it is possible for the foreclosure, which occurred less than a week before the Defendant filed his bankruptcy petition, to serve as the basis for a § 727(a)(2) action. The Code defines a "transfer" in the broadest possible terms to include "each mode, direct or indirect, absolute or condition, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54).

In the case at bar, the Plaintiff alleges a conspiracy between the Defendant and his mother, Lora Jean Kilroy (LJ Kilroy). LJ Kilroy, through her solely-controlled entity, Buffalo Funding, LLC (Buffalo Funding), purchased a loan from Southwest Bank of Texas (the SWB Note). Several years earlier, the Plaintiff and Defendant pledged various stocks and interests as collateral for the SWB Note. The Plaintiff's claim is that the Defendant intentionally allowed the loan to default so that LJ Kilroy could foreclose. Pursuant to the liberal language of § 101(54), the intentional non-payment of a note so that the lienholder could foreclose would be a "transfer" which was indirect and involuntary. Thus, the Defendant is incorrect in stating that "the only transfer identified that could be the subject of Guerriero's § 727(a)(2) action is Kilroy's pledge of his various interest for the SWB Loan." Since the foreclosure occurred within a week of the petition date, the Court cannot grant summary judgment on the basis that the pledge occurred four years prior to the petition date.

Second, the Defendant argues that the Plaintiff has shown insufficient evidence of fraudulent intent. The Plaintiff relies heavily on a handwritten agreement between the Defendant and LJ Kilroy. The plain language of this document appears to provide support for the Plaintiff's alleged conspiracy.

5

For example, in this document the Defendant promises to stop payment on the SWB note by no later than September 4 so that "this will allow you to force a sale–the proceeds of which must first be used to pay off the Southwest Bank debt, then the Lora Jean Kilroy debt, with the balance coming to WS Kilroy Jr." [Plaintiff's Summary Judgment Exhibit #12.] The Defendant again argues that this handwritten note, which was written in 2004, is not relevant evidence to any possible fraudulent intention of the Defendant in 2001 when the pledge occurred. If, as the Court stated above, the foreclosure itself rather than the pledge is the subject transfer, this handwritten agreement becomes immediately relevant because it was executed just a few months before LJ Kilroy, through Buffalo Funding, purchased the SWB note. In light of the proximity of the execution of this handwritten agreement, the default on the SWB Note by the Defendant, and the purchase of the SWB Note by LJ Kilroy, a reasonable trier of fact could conclude that this note evidences a conspiracy between the Defendant and his mother such that the Defendant was complicit in the foreclosure of the pledged stock. Accordingly, the Court finds that the Motion for Summary Judgment should be denied as to the § 727(a)(2) claim.

### B. The Motion for Summary Judgment as to Plaintiff's cause of action under § 727(a)(5) is denied.

Under 11 U.S.C. § 727(a)(5), "[t]he court shall grant the debtor a discharge, unless– . . . (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The objecting creditor has the burden of proof under § 727(a)(5). *Martin Marietta Materials Southwest, Inc v. Lee (In re Lee)*, 309 B.R. 468, 478 (Bankr. W. D. Tex. 2004). To establish a prima facie case, the creditor "must prove which assets are 'missing.'" *Lee*, 309 B.R. at 478 (citing *In re Sanders*, 128

B.R. 963, 974 (Bankr. W. D. La. 1991)). Once the creditor can establish a prima facie case, "the burden then shifts to the debtors to provide a satisfactory explanation for that loss." *Id.*; *see also In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984).

The Plaintiff alleges in connection with the § 727(a)(5) claim that the foreclosure was a "loss" and the asset lost was the stock he had pledged as collateral for the SWB note. The facts and evidence relied upon by the Plaintiff are identical to the conspiracy alleged under § 727(a)(2). In the Opinion on the Motion to Dismiss, this Court held that a "loss" of assets referred to more than a physical inability to locate an asset. The Court stated, "Kilroy will have to explain more than where the assets went; what is most important is how they ended up there, specifically in possession of his mother, Mrs. Kilroy." *Guerriero v. Kilroy (In re Kilroy)*, 354 B.R. 476, 498 (Bankr. S.D. Tex. 2006).

Kilroy appealed this specific finding on the basis that the Court had misinterpreted the statutory meaning of "loss of assets." On appeal, Kilroy argued that a foreclosure is not a "loss of assets," and that his disclosure of that foreclosure fulfilled his obligation to satisfactorily explain any loss which may have occurred. In a seven page opinion, the District Court affirmed this Court's ruling and interpretation of § 727(a)(5). In setting forth why Kilroy's argument was incorrect, the District Court stated in its affirming opinion:

> "Second, Kilroy is wrong when he asserts that he has explained this loss satisfactorily merely because he reported that Buffalo Funding foreclosed on the assets. An explanation of satisfactory if:
>
>> the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or shortage. He is satisified. He no longer wonders. He is contented."

*First Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 993 (5th Cir. 1983) (quoting *Shapiro v. Ornish & Holliday (In re Shapiro & Ornish)*, 37 F.2d 403, 406 (N.D. Tex. 1929)).

As of the date of this Memorandum Opinion, the undersigned judge is not contented with Defendant's explanation of the circumstances surrounding the loss of the assets through Buffalo Funding's foreclosure. The evidence attached to the Defendant's Motion for Summary Judgment does not satisfy this Court that the Plaintiff's cause of action under § 727(a)(5) must fail. It may well be that this Court, after hearing testimony and reviewing exhibits, becomes satisfied with the Defendant's explanation and therefore concludes that the Plaintiff's cause of action under § 727(a)(5) must fail. However, this level of satisfaction may only be achieved through trial. Accordingly, the Defendant's Motion for Summary Judgment as to the § 727(a)(5) claim is denied.

### C. The Motion for Summary Judgment as to Plaintiff's cause of action under § 523(a)(2)(A) is granted.

The Plaintiff's Response to the Motion for Summary Judgment is organized into headings for each cause of action. Paragraph 38 appears under the heading "Second Cause of Action – 727(a)(5)." Paragraph 39 appears under the heading "Fourth Cause of Action – 523(a)(4)." There is no heading for the third cause of action (i.e. § 523(a)(2)(A)), nor are there any missing pages or paragraphs. In hastily preparing the Response to the Motion for Summary Judgment, it appears that counsel for the Plaintiff simply failed to address any arguments presented under § 523(a)(2)(A).[3]

---

[3] At the February 28, 2008 hearing, the Court advised counsel for the Plaintiff that the date of the hearing was also the deadline for the Plaintiff to file a Response to the Motion for Summary Judgment. The Court gave the Plaintiff the option of (1) going forward on that date with the hearing on the objection to claim; or (2) consolidating the objection to claim with this adversary proceeding. Counsel selected the second option knowing that the Response was due by the end of the day; indeed, the Plaintiff's Response was timely filed before the end of the day. It should be noted that the amended scheduling order setting the due dates for pleadings in this adversary proceeding was entered on July 24, 2007. Thus, counsel for the Plaintiff had more than sufficient notice as to when the Response was due. Additionally, the Court would note that, in the two weeks since the Defendant filed a Reply to the Response, counsel for the Plaintiff has not filed a Surreply attempting to explain the absence of any discussion of § 523(a)(2)(A) in the Response.

The sloppiness and lack of proofreading in the Response is further evidenced by the inclusion of arguments in the Response related to embezzlement or larceny under § 523(a)(4). The Opinion on the Motion to Dismiss granted the motion to dismiss under § 523(a)(4) as to <u>all</u> claims of embezzlement or larceny. In this Court's Order of October 30, 2006,[4] the ordered paragraph relating to § 523(a)(4) expressly states that it is: "ORDERED that the Debtor's Motion to Dismiss is DENIED as to claims under § 523(a)(4) for claims of fraud or defalcation while acting in a fiduciary capacity, but is GRANTED as to claims under § 523(a)(4) for embezzlement or larceny for all claims." [Docket No. 20.] The Court therefore wonders why Plaintiff's counsel is wasting this Court's time arguing about issues on which this Court has already ruled and which the Plaintiff did not appeal. At best, the Court will assume that Plaintiff's counsel was quickly copying and pasting from his First Amended Complaint Objecting to Discharge in order to timely file the Response to the Motion for Summary Judgment;[5] at worst, counsel may not have read the Opinion on the Motion to Dismiss in preparation for the February 28, 2008 hearing.[6] Under either assumption, counsel has shown a severe degree of ill-preparedness which the Court will not countenance.

The Court concludes that the Defendant has carried his initial burden under Federal Rule of Civil Procedure 56(e) to show that there is "no genuine issue as to any material fact" related to the Plaintiff's § 523(a)(2)(A) claim. The burden then shifts to the Plaintiff to present affirmative

---

[4] The Order is entitled as follows: "Order Granting in Part, Denying in Part Debtor's Supplemental Motion to Dismiss First Amended Complaint Objecting to Discharge Pursuant to 11 U.S.C. §§ 523 and 727." [Docket No. 20.]

[5] The language in paragraphs 47-49 of the Response to the Motion for Summary Judgment [Docket No. 51] tracks almost verbatim with text contained in paragraphs 71-73 of the First Amended Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and § 727 [Docket No. 16] which the Plaintiff filed after the Defendant had filed the Motion to Dismiss.

[6] The Court would also note that paragraph 46 of the Response appears to be copied-and-pasted from the Plaintiff's affidavit because it inexplicably changes into the first person (e.g., "I removed Kilroy as the manager of W&L.").

9

evidence showing a genuine issue of material fact. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Since the Court has received no response from the Plaintiff related to § 523(a)(2)(A), the Court finds that he has failed to satisfy this burden. Accordingly, the Court grants the Motion for Summary Judgment as to the Plaintiff's claim under § 523(a)(2)(A).

### D. The Motion for Summary Judgment as to Plaintiff's cause of action under § 523(a)(4) is granted.

A debt is nondischargeable under § 523(a)(4) if it is based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).[7] The exception to discharge under § 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987).

An analysis of nondischargeability under § 523(a)(4) "involves a two-step process–state law is consulted to determine whether the requisite trust exists; however, the fiduciary nature of the relationship ultimately remains a federal question." *Clarendon Nat'l Ins. Co. V. Barrett (In re Barrett)*, 156 B.R. 529, 533 (Bankr. N.D. Tex. 1993)(citations omitted). "[T]he concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract." *In re Bennett*, 989 F.2d 779, 784 (5th Cir. 1993) (citing *In re Angelle*, 610 F.2d 1335 (5th Cir. 1980)). "In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state

---

[7] As noted previously, the Court dismissed the Plaintiff's § 523(a)(4) claims related to embezzlement or larceny in its Opinion on the Motion to Dismiss. .The only surviving claim addressed in this Memorandum Opinion is for fraud or defalcation while acting in a fiduciary capacity.

10

and federal law. The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.*

In the Opinion on the Motion to Dismiss, the Court noted that both AIH and W&L were entities created under the laws of the state of Delaware. The Court found that although there was no fiduciary duty as between two limited partners, the Defendant was the controlling shareholder of W&L and owed the Plaintiff, as a minority shareholder, a fiduciary duty under Delaware law. The partnership agreement for AIH was not presented to the Court in connection with the Motion to Dismiss and the Court, therefore, relied on general principles of Delaware and common law regarding fiduciary duties.

However, the Defendant, as part of the Motion for Summary Judgment, submitted the partnership agreement for AIH. [Defendant's Ex. 5.] Specifically, the Defendant cites the provision of the partnership agreement entitled "Standards and Conflicts" which provides that: "[T]he General Partner [i.e. W&L] shall conduct the affairs of the Partnership in good faith toward the best interest of the Partnership. The General Partner, however, is liable for errors or omissions in performing its duties with respect to the Partnership only in the case of bad faith, gross negligence, or breach of the provisions of this Agreement, but not otherwise." [Defendant's Ex. 5, art. 6.05(A).]

The Delaware Revised Uniform Limited Partnership Act (DRULPA) permits partners, through a partnership agreement, to contract out of fiduciary duties imposed under state law or common law:

> "(d) To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's

11

duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing.
. . .
(f) A partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person to a limited partnership or to another partner or to an other person that is a party to or is otherwise bound by a partnership agreement; provided, that a partnership agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."

6 Del. C. § 17-1101(d) and (f).

The Delaware Supreme Court has described this section of DRULPA as "a safe harbor against claims of breach of fiduciary duty for general partners who act in good faith reliance on the partnership agreement." *United States Cellular Inv. Co. v. Bell Atl. Mobile Sys.*, 677 A.2d 497, 501 (Del. 1996). This Court did not consider this particular provision of DRULPA previously because the AIH partnership agreement was not yet part of the record. *See Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1149-1150 (Del. Ch. 2006) ("As a result [of 6 Del. C. § 17-1101(d)], in the alternative entity context, it is frequently impossible to decide fiduciary duty claims without close examination and interpretation of the governing instrument of the entity giving rise to what would be, under default law, a fiduciary relationship.").

After having reviewed the AIH partnership agreement, particularly Article 6, the Court concludes that the language cited by the Defendant in the Motion for Summary Judgment does in fact reduce the general partner's duties from a fiduciary duty to merely a duty of good faith. The Plaintiff's Response presents no compelling argument for the imposition of a fiduciary duty and completely fails to respond to the issue presented by DRULPA and the AIH partnership agreement. The Plaintiff argues that a fiduciary duty exists because: (1) the Defendant controls W&L, which in

12

turn is the general partner of AIH; (2) therefore the Defendant is essentially acting as the general partner of AIH; and (3) as the general partner of AIH, the Defendant owes the Plaintiff a fiduciary duty. However, if the partnership agreement limits W&L's duties to merely that of good faith rather than as a fiduciary, then under Delaware law a higher standard may not be imposed upon the Defendant as the controlling member of W&L. Accordingly, the Court finds that the Plaintiff is unable to establish that the Defendant owed him a fiduciary duty and summary judgment should be granted as to the Plaintiff's remaining claim under § 523(a)(4).

### E. The Motion for Summary Judgment as to Plaintiff's cause of action under § 523(a)(6) is denied.

The final objection to discharge filed by the Plaintiff is for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Fifth Circuit has defined the test for willful and malicious as "where there is either an objective substantial certainty of harm or subjective motive to cause harm." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (citing *In re Miller*, 156 F.3d at 606; *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003)). Also, "the debtor must have intended the actual injury that resulted and not just performed an intentional act that resulted in injury." *Miller*, 156 F.3d at 603.

The factual basis for the Plaintiff's § 523(a)(6) is identical to the other claims. He alleges a scheme between the Defendant and his mother to "squeeze out" the Plaintiff from the operation of any of the entities and to foreclose upon his interests in these entities. The Court has concluded that the handwritten agreement was sufficient evidence for the Plaintiff to survive summary judgment under § 727(a)(2); likewise, this Court concludes that this evidence is sufficient for the Plaintiff to defeat the Motion for Summary Judgment as to his § 523(a)(6) claim. A reasonable trier

of fact could conclude that the handwritten agreement evidences the Defendant's intent to cause willful and malicious injury to the Plaintiff's interest by allowing LJ Kilroy to foreclose on it. Accordingly, the Court finds that the Motion for Summary Judgment should be denied as to the Plaintiff's § 523(a)(6) claim.

### IV.

In conclusion, the Court finds that the Motion for Summary Judgment should be denied as to the Plaintiff's claims under §§ 727(a)(2), 727(a)(5), and 523(a)(6), but should be granted as to the claims under §§ 523(a)(2) and (a)(4). A corresponding order will be entered on the docket simultaneously with the entry of this Memorandum Opinion. Finally, the Court wishes to reiterate its admonishment of the haphazard pleading submitted by the Plaintiff. The Court hopes that more time will be spent preparing for the trial than was spent drafting the Response to the Motion for Summary Judgment.

Signed on this 24th day of March, 2008.

Jeff Bohm
U.S. Bankruptcy Judge